```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
HAROLD CHESTNUT,

               Petitioner,                    MEMORANDUM & ORDER
                                              06-CV-2172 (JS)
       -against-

THE PEOPLE OF THE STATE OF NEW YORK,

               Respondent.
----------------------------------X
APPEARANCES:
For Petitioner:     Harold Chestnut, pro se
                    315 W. Broadway
                    Apt. #3A
                    Long Beach, NY 11561

For Respondent:     Tammy J. Smiley, Esq.
                    Christin N. Connell, Esq.
                    Assistant District Attorneys, Nassau County
                    262 Old Country Road
                    Mineola, NY 11501
```

INTRODUCTION

Petitioner Harold Chestnut ("Chestnut" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons below, Chestnut's petition is DENIED.

PROCEDURAL HISTORY

Petitioner was convicted by a jury in the County Court of Nassau County, on June 22, 2004, of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39 [1]) and Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.26 [1]) and sentenced as a second felony offender to two intermediate terms of six to twelve years imprisonment to be served concurrently.

Petitioner appealed his conviction to the Appellate

Division, Second Department. On appeal, Petitioner claimed that (1) his right to be present was violated when he was absent for a conference between the court and a prosecution witness, (2) the verdict was repugnant, (3) the court erred by failing to charge the jury that a witness was his accomplice as a matter of law and that the witness's testimony was not sufficiently corroborated, and (4) he received ineffective assistance of counsel due to counsel's failure to request a pre-trial hearing to suppress physical evidence and challenge the legality of Petitioner's arrest.

On December 5, 2005, the Appellate Division confirmed the conviction. The court found that Petitioner was not deprived of his right to be present at trial by his exclusion from an informal conference with respect to the waiver of a witness's right against self-incrimination. The Appellate Division also found that the verdict was not repugnant because the count for which Petitioner was acquitted (N.Y. Penal Law § 220.06 [5]) contained an element not present in the two counts for which Petitioner was convicted (N.Y. Penal Law §§ 220.16 [1], 220.39 [1]). People v. Chestnut, 24 A.D.3d 463, 464, 806 N.Y.S.2d 224, 225 (2d Dep't 2005). It further determined that while the County Court of Nassau County should have charged the jury that the witness to whom Petitioner sold cocaine was an accomplice as a matter of law, the error was harmless because the evidence of the Petitioner's guilt was overwhelming and there was no reasonable probability that the error affected the

verdict.  Id.  Finally, the court noted that Petitioner's last claim was meritless.  Id.

On April 12, 2006, Petitioner's request for leave to appeal to the New York Court of Appeals on the same grounds as those raised in the Appellate Division was denied. People v. Chestnut, 6 N.Y.3d 846, 849 N.E.2d 975, 816 N.Y.S.2d 752 (2006).

His state remedies thus exhausted, Petitioner now seeks a federal writ of habeas corpus from this Court based on four grounds.  First, Petitioner claims that he was denied the right to be present at "a material stage of the court proceedings" against him, namely an informal conference in which the court made an inquiry to determine whether a prosecution witness understood his rights before giving testimony that incriminated himself. Additionally, Petitioner claims that his conviction should have been set aside because it was repugnant.  Finally, Petitioner claims that the County Court of Nassau County improperly failed to charge the jury that one witness was his accomplice as a matter of law, and that the accomplice's testimony at trial was not sufficiently corroborated.

## FACTUAL BACKGROUND

On May 23, 2003, shortly before 4:40 p.m., Phillip Pinckney ("Pinckney") went inside a 7-Eleven store in Long Beach. Pinckney placed a telephone call to Petitioner via a pay phone at

7-Eleven and asked, "could I get that now[?]" (Pinckney: T. 287).[1] When Pinckney asked for "that" he was referring to crack-cocaine. (Pinckney: T. 288). Petitioner told Pinckney to buy him a Sprite soda, and the two men arranged to meet at the Leroy Conyers Park Playground in Long Beach, Nassau County, New York. (Pinckney: T. 287).

On that same day, Long Beach Police Department Detective James Canner ("Canner") and his partner Detective Orlando Garcia ("Garcia") were sitting in an unmarked police car on a street running adjacent to Leroy Conners Playground. The detectives were conducting surveillance on an unrelated matter. Canner soon noticed Petitioner standing by himself in the middle of the playground. Petitioner was not speaking to anyone and was waiting on and around a bench in the middle of the playground. (Canner: T. 191-94, 226, 229-33; Garcia: T. 360-62, 366).

Canner subsequently saw Pinckney approach Petitioner and observed the two men looking around the park. Pinckney handed Petitioner a Sprite soda, which Petitioner placed on a nearby table. Petitioner reached into his right front pants pocket and pulled out several small items, which he then placed into Pinckney's outstretched left hand. Pinckney looked at the bags,

---

[1] Numbers in parentheses preceded by "T" refer to the Minutes of Trial. Numbers in parentheses preceded by "S" refer to the Minutes of Sentencing. Names in parentheses refer to the witnesses who provided the testimony being cited in this Order.

clenched his fist, and put his hand into his left front pants pocket. The two men then exited the park and walked away in separate directions. (Canner: T. 194-95, 211-13, 235-39, 280-84; Pinckney: T. 289-90, 306-08; Garcia: T. 362-63).

Canner had been a member of the Narcotics Task Force for six years, received extensive training in the field of controlled substance enforcement and identification, and attended the Drug Enforcement Administration ("DEA") drug school. (Canner: T. 190-91, 260-61). He immediately suspected that a drug transaction had taken place. (Canner: T. 194). Canner quickly contacted two fellow detectives, Detective-Sergeant Howard Domitz ("Domitz") and Detective William Roche ("Roche"), who were working on the opposite side of the park, and told them what he had just observed. Canner described what Pinckney and Petitioner looked like. Canner, Domitz, Roche, and Garcia then watched Pinckney and Petitioner as they walked out of the park in different directions. Canner and Garcia exited their car and followed Petitioner, but before he could be stopped, Petitioner slipped into a nearby house. Canner and Garcia did not attempt to enter the house to apprehend Petitioner because there were children playing in the front yard. (Canner: T. 194-96, 222-25, 228, 260-62; Garcia: T. 363-65; Domitz: T. 371; Roche: T. 413-14, 420-21).

In the meantime, Domitz and Roche were watching from a nearby vehicle as Pinckney walked away from the park. As Pinckney

5

neared the Detectives' vehicle, Domitz and Roche pulled him over and asked if they could speak with him. The detectives exited the car, and Domitz searched Pinckney's pockets. He found three small bags of what appeared to be crack-cocaine and handed them over to Roche. The detectives arrested Pinckney and drove him back to police headquarters. (Pinckney: T. 290, 310-11; Domitz; T. 371-72, 375, 381; Roche: T. 414-17, 422). Roche subsequently processed Pinckney and charged him with criminal possession of a controlled substance. Roche and Domitz did not know whether the crack-cocaine Pinckney possessed weighed enough to constitute a felony, so they erred on the side of caution and charged him with a misdemeanor.[2] The officers processed Pinckney, released him from police headquarters, and gave him an appearance ticket to appear in court the next day. Pinckney later reached an agreement with the Nassau County District Attorney's Office whereby he agreed to testify against Petitioner in exchange for consideration in his own case. (Pinckney: T. 313, 340, 348-51; Domitz; T. 388-94, 400-03, 407-08;

---

[2] At police headquarters, the Detectives heat-sealed the three small bags found in Pinckney's pocket into one large bag. Roche and Domitz then placed their initials on the bag, and sent it to the Forensic Evidence Bureau ("FEB"), where the contents were weighed and tested by Detective Marc Timpano ("Timpano"). Timpano determined that the three small bags contained crack-cocaine with an aggregate weight of seven hundred and twenty four milligrams and a purity of 86%. At trial, both sides stipulated that the bags contained crack-cocaine and that the weight of the cocaine, based on 86% purity, was six hundred and twenty four milligrams. (Domitz: T. 376-78; Roche: T. 417-18; Timpano: T. 462-66).

6

Roche: T. 421-22, 443-48).

The next day, May 28, 2003, Canner saw Petitioner standing on a street in Long Beach, New York. Canner and his partner approached Petitioner, identified themselves, and placed him under arrest. (Canner: T. 219-20).

On November 26, 2003, the jury found Petitioner guilty of Criminal Sale of a Contraband Substance in the Third Degree and Criminal Possession of a Contraband Substance in the Third Degree. (T. 595). The jury acquitted Petitioner of Criminal Sale of a Contraband Substance In or Near School Grounds and of Criminal Possession of a Controlled Substance in the Fifth Degree. Id. On June 22, 2004, Petitioner was sentenced as a second felony offender to two intermediate terms of six to twelve years imprisonment to be served concurrently. (S. 6-7).

## DISCUSSION

I. Standard of Review

A federal court may "entertain an application for a writ of habeas corpus" on behalf of an individual in state custody pursuant to the judgment of a State court "only on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996) (emphasis added); see also Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States.").

Under the provisions of 28 U.S.C. § 2254(d), a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This deferential review is applied as long as the "federal claim has been 'adjudicated on the merits' by the state court." Cotto v. Herbert, 331 F.3d 217, 231 (2d Cir. 2003). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002) (internal citations and quotations omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (internal citations and quotations omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts

8

that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (internal quotations and citations omitted). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Penry, 532 U.S. at 792. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). As a result, Petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." Id. This is "particularly important when reviewing the trial court's assessment of witness credibility." Cotto, 331 F.3d at 233 (internal citations and quotations omitted).

II. Petitioner's Claims

    A. Petitioner's Absence from an Informal Conference did not Violate his Due Process Rights

During a trial recess, after the close of Pinckney's

9

direct examination and after Petitioner left the courtroom, the court asked the prosecuting attorney to speak with Pinckney's attorney. The court made this request to ensure that Pinckney understood the deal he had made with the prosecution, and that he was not unknowingly incriminating himself. (T. 321-23). The prosecutor spoke with Pinckney's attorney, and the substance of that conversation was later put on record, along with a colloquy in which the court questioned Pinckney and made sure that he understood his constitutional rights. Pinckney stated that he fully understood the deal he had made with the prosecutor and that in exchange for his testimony Pinckney would be given consideration in his own case. (T. 325-33).

Petitioner now claims, as he did in his state appeal, that the court's act of conducting the "hearing" despite Petitioner's absence denied Petitioner the right to be present at a material stage of the trial. Petitioner argues that the proceeding was significant because it included a discussion of Pinckney's plea agreement with the District Attorney's Office. On appeal, the Appellate Division held that Petitioner "was not deprived of his right to be present at trial by his exclusion from an informal conference with respect to the waiver by a witness of his privilege against self-incrimination. The conference from which [Petitioner] was excluded was an ancillary proceeding dealing only with the rights of the witness. [Petitioner] had no right to

be present at such a proceeding." People v. Chestnut, 806 N.Y.S.2d 224, 224-225 (N.Y. App. Div. 2d Dep't 2005). The Court finds that the state court did not err in its holding.

The Supreme Court has long recognized that a defendant has the privilege "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Comm. of Massachusetts, 291 U.S. 97, 105, 54 S. Ct. 330, 78 L. Ed. 674 (1934); see also Faretta v. California, 422 U.S. 806, 820, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (holding that a criminal defendant has the right to be "present at all stages of the trial"). This privilege permits defendants to be present at not only the actual trial, but at proceedings that precede or occur after the trial. See Snyder, 291 U.S. at 106-7 (noting that a defendant has a right to be present during voir dire, summations, as well as certain pre- and post-trial motion hearings); see also Dixon v. Miller, 56 F. Supp. 2d 289, 300-01 (E.D.N.Y. 1999) (extending the right to be present to the sentencing stage). This right, however, is not absolute. See Illinois v. Allen, 397 U.S. 337, 342, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) (refusing to hold that "a trial judge could never expel a defendant from his own trial"). For example, the privilege of presence does not necessarily extend "when presence would be useless, or [when] the benefit [is] but a shadow." Snyder, 291 U.S. at 106-7. "Thus, a

defendant's absence from a portion of his trial is reversible error only when it has a 'relation, reasonably substantial, to his opportunity to defend' himself." Overton v. Laclair, No. 07-CV-4599, 2009 U.S. Dist. LEXIS 75762, at *17 (S.D.N.Y. July 15, 2009) (quoting Snyder, 291 U.S. at 108, 54 S. Ct, at 341.

Petitioner's argument is meritless. The trial court conducted the conference merely to determine if Pinckney understood his agreement with the prosecutor and whether Pinckney could proceed without his attorney present. Pinckney offered no specific details about his plea agreement with the prosecutor that were not included in his testimony during trial. Thus, Petitioner's right to be present for all material stages of his trial was not violated because his presence would not have afforded him any meaningful opportunity to affect the outcome of the proceeding, and his absence had no relation to Petitioner's ability to defend himself. Petitioner's presence during the conference with Pinckney would have likely been "useless, or the benefit but a shadow." Snyder, 291 U.S. at 105-07, 54 S. Ct. at 332-33. Thus, Petitioner is not entitled to habeas corpus relief on this ground.

B. <u>Petitioner's Claim that the Verdict was Repugnant is Meritless</u>

Petitioner argues that the jury's verdict was repugnant because the jury found Petitioner guilty of sale of a controlled substance and possession with the intent to sell, but found him not guilty of the "straight possessory." The Appellate Division

rejected Petitioner's identical argument on appeal, finding that

> "[b]ecause the crime of criminal possession of a controlled substance in the fifth degree (Penal Law § 220.06 [5]), of which the defendant was acquitted, included, as defined in the trial court's charge, an element (i.e., the weight of the cocaine possessed by the defendant) that is not common to the crimes of criminal sale of a controlled substance in the third degree (see Penal Law § 220.39 [1]) and criminal possession of a controlled substance in the third degree (see Penal Law § 220.16 [1]), of which the defendant was convicted, the verdict was not repugnant."

Chestnut, 806 N.Y.S.2d at 225. The Court agrees.

At the outset, even if Petitioner received an inconsistent verdict, "it has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty." United States v. Acosta, 17 F.3d 538, 545 (2d Cir. 1994); see also House v. Miller, No. 02-CV-5379, 2003 U.S. Dist. LEXIS 24380, at *50 (E.D.N.Y. Oct. 27, 2003) ("A claim of inconsistent or repugnant verdicts generally presents no issue upon which federal habeas corpus relief could be granted.").

In any event, Petitioner did not receive an inconsistent verdict. "Under New York law, two counts are inconsistent when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." Sweet v. Bennett, 353 F.3d 135, 143 (2d Cir. N.Y. 2003) (internal quotation marks omitted). Petitioner was convicted by a jury of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16

[1]) (possession of a narcotic drug with intent to sell) and Criminal Sale of a Contraband Substance in the Third Degree (N.Y. Penal Law § 220.39 [1]) (sale of a narcotic drug). Petitioner was acquitted of Criminal Possession of a Controlled Substance in the Fifth Degree (N.Y. Penal Law § 220.06 [5]) (possession of cocaine weighing five hundred milligrams or more) and Criminal Sale of a Controlled Substance In or Near School Grounds (N.Y. Penal Law § 220.44 [4]).

Petitioner argues that the jury's verdict was repugnant because the jury convicted him of sale of a controlled substance and possession with the intent to sell but found him not guilty of possessing cocaine having pure weight of five-hundred milligrams or more, even though the parties stipulated at trial that the three crack-cocaine bags tested contained six hundred and twenty four milligrams of pure cocaine.[3]  However, the trial court's instructions set forth the correct required elements of each crime. Because the weight of the crack-cocaine was an essential element of the fifth degree possession count but not the third degree sale and possession counts, there was no inherent inconsistency in the

---

[3] See supra, note 2.  Timpano's quantitative analysis determined that the aggregate weight was seven hundred and twenty-three milligrams. Based on an 86% purity, the total purity weight of cocaine was six hundred and twenty-four milligrams. However, the court advised members of the jury that such stipulation merely meant that neither side disputed the weight, and that it was up to the jury to evaluate the facts and give them the weight it deemed appropriate. (T. 554).

14

jury's verdict. Thus, the jury's verdict was not repugnant because the count for which Petitioner was acquitted contained an element not present in the two counts for which he was convicted.

  C. <u>Petitioner is not Entitled to Habeas Corpus Relief Based on the Trial Court's Jury Instructions</u>

Petitioner's counsel asked the trial court to instruct the jury that Pinckney was an accomplice as a matter of law, because Pinckney was the buyer in the charged drug transaction. Counsel also argued that Pinckney's testimony must be corroborated. The court advised counsel that it would instruct the jury that there has to be corroboration of an accomplice. (T. 514). However, in its instructions to the jury, the trial court stated that whether Pinckney was Petitioner's accomplice was a matter for the jury to decide.

On appeal, Petitioner argued that the trial court should have instructed the jury that Pinckney was an accomplice. The Appellate Division found that while the trial court "should have charged the jury that the witness to whom [Petitioner] transferred cocaine was an accomplice as a matter of law, the error was harmless, since the evidence of the [Petitioner's] guilt was overwhelming and there [was] no reasonable probability that the error affected the verdict." <u>Chestnut</u>, 24 A.D.3d at 464, 806 N.Y.S.2d at 225. Petitioner now raises the same argument in his petition for a writ of habeas corpus. The Court finds that the trial court did not err, and Petitioner is not entitled to habeas

15

corpus relief on this ground.

Petitioner's claim that Pinckney should have been charged as an accomplice does not raise a claim for habeas review. Rather, this claim "is based solely upon New York State law concerning accomplice status and the requirement of corroboration. As there is no federal constitutional question presented in this case, there can be no basis for habeas relief." Weeks v. Conway, No. 06-CV-0880, 2009 U.S. Dist. LEXIS 61798, at *16 (N.D.N.Y July 20, 2009).

In any event, the Court agrees with the Appellate Division that even if the jury should have been instructed that Pinkney was an accomplice, any error was harmless in light of the overwhelming evidence of Petitioner's guilt. This evidence included not only Pinckney's testimony about his drug exchange with Petitioner on May 23, 2003, but the testimony of two detectives, Canner and Garcia, who witnessed the sale, and two more detectives who testified that they recovered the drugs Petitioner sold to Pinckney only minutes after the exchange. (Canner: T. 194, 211, 236-39, 280; Garcia T. 362-65; Domitz: T. 371-72, 375; Roche: T. 414-17). Given these testimonies, any error would not affect the jury's verdict. Therefore, Petitioner is not entitled to habeas relief on this ground.

> D. <u>Petitioner's is not Entitled to Habeas Corpus Relief Based on the Claim that Pinckney's Testimony was not Sufficiently Corroborated</u>

Petitioner maintains that Pinckney's testimony at trial

was not sufficiently corroborated. However, "there is no federal or constitutional requirement that accomplice testimony be corroborated." McCarthy v. Phillips, No. 04-CV-3545, 2009 U.S. Dist. LEXIS 92413, at *13 (E.D.N.Y. Sept. 30, 2009); see also Smithwick v. Walker, 758 F. Supp. 178, 186 (S.D.N.Y. 1991) ("[T]he requirement of accomplice corroboration is solely a product of New York State law.").

In any event, there was ample evidence during the trial to corroborate Pinkney's testimony. As noted above, two officers testified that they witnessed Petitioner pass small items to Pinckney in Leroy Conners Playground on May 23, 2003 and witnessed Pinckney put those items into his left pants pocket. (Canner: T. 194, 211, 236-39, 280; Garcia; T. 362-65). Two other Detectives, Domitz and Roche, testified that they found three small bags of crack-cocaine in Pinckney's left pocket when they arrested him only moments after the drug exchange. Additionally, the crack-cocaine was offered as an exhibit during trial. (T. 377, 379). Thus, the testimonies of the Detectives Canner, Garcia, Domitz, and Roche, as well as the admission of the crack-cocaine, constituted sufficient corroborating evidence to connect Petitioner to the commission of the crime. Thus, Petitioner is not entitled to habeas corpus relief on this ground.

The Court notes that Petitioner makes a passing reference to allegedly "perjured testimony" given at trial. To the extent

that Petitioner is arguing that the officers "perjured" their testimonies, the Court rejects this claim. Petitioner did not raise this argument on appeal, and thus this claim is procedurally defective. Under New York law, Petitioner was entitled to one appeal, and one appeal only. Because Petitioner failed to raise his "perjured testimony" argument on appeal, Petitioner is now foreclosed from doing so, and from raising this argument in a federal habeas corpus petition. See Gibson v. Phillips, 263 F. App'x 78, 80, No. 06-3252-pr, 2008 U.S. App. LEXIS 2439 (Feb. 4, 2008) (holding that a petitioner was "procedurally barred from pursuing his Miranda claim in federal court because he did not 'fairly present' it in one complete round of a state-court appellate review process"); see also Zimmerman v. Burge, 492 F. Supp 2d 170, 189 ("Since petitioner's claim . . . could have been raised on direct review but was not, it is deemed exhausted and procedurally barred."). In any event, Petitioner has not supported this claim with any facts, and there is absolutely no evidence before the Court indicating that the officers perjured their testimony.

III. A Certificate of Appealability is Denied

The Court will not issue a certificate of appealability in this case. Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C § 2253. The issues involved in this case are not debatable among reasonable jurors, a

court could not resolve the issues in a different manner, and the questions involved do not deserve encouragement to proceed further. See <u>Lucidore v. N.Y. State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000).

CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's writ of habeas corpus in its entirety. The Court will not issue a certificate of appealability. The Clerk of the Court is directed to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   Central Islip, New York
         November   24  , 2009